UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**Su Be**, individually,
and on behalf of all those
similarly situated;

        Plaintiff,

v.

**Comcast Corporation** and **Magellan Health Services, Inc.**,

        Defendants.
_____/

CASE NO.:

**ERISA PARITY ACT VIOLATION**
**CLASS ACTION**

**JURY TRIAL DEMANDED**

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**
**UNDER FED. R. CIV. P. 23(b)(1) & 23(b)(3)**

Plaintiff Su Be, individually and on behalf of all those similarly situated, asserts, to the best of her knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the following:

**INTRODUCTION AND NATURE OF THIS ACTION**

**1.** Plaintiff Su Be challenges Defendants' standardized practice of excluding from coverage mental health services rendered at wilderness therapy programs while at the same time covering medical services rendered at skilled nursing facilities and rehabilitation hospitals, which are considered "comparable" under the federal Mental Health Parity and Addiction Equity Act. Under *Gallagher v. Empire HealthChoice Assur. Co*, 339 F. Supp.3d 248 (S.D.N.Y. 2018), this construction states a claim for violation of the

federal Parity Act: "[T]he relevant comparison is not whether benefits for wilderness therapy are available for medical/surgical patients, but rather whether the Plan has chosen to provide benefits for skilled nursing facilities and rehabilitation centers for medical/surgical patients, but chosen to deny benefits to those with mental health conditions who seek coverage for a residential treatment center offering wilderness therapy." *Id*. at 258.

2. But that's exactly what happened here. Plaintiff's coverage request for medically necessary mental health services were denied on the strength of a plan exclusion for such services. The plan expressly covers comparable medical services rendered at skilled nursing facilities and rehabilitation hospitals.

3. With this action, Plaintiff and class members seek to recover charges for services rendered at wilderness therapy programs and further to enjoin Defendants from further violations of the Parity Act.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction under 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5 million and at least one class member is diverse from the Defendants in this case.

5. This Court also has jurisdiction under 28 U.S.C. § 1331, as it arises under federal law.

6. Venue is appropriate in this judicial district because the Plaintiff resides here and each Defendant conducts considerable business within this district as well, and many of the breaches described here occurred within this judicial district.

7. In conformity with 29 U.S.C. §1132(h), Plaintiff will serve the original Complaint by certified mail on the Secretary of Labor and the Secretary of the Treasury.

**PARTIES**

8. Plaintiff Su Be, at all material times, resided on East 76th Street, New York City, within this judicial district. From 1985 – 2017, Su Be worked at NBC, owned first by RCA, later by GE, and finally by Comcast. In 2017, Su Be's health insurance was provided through a Comcast COBRA plan covering Comcast employees and plan participants and beneficiaries.

9. The services at issue were incurred by Su Be's daughter, whose initials are So Be Because of the intensely private nature of the medical services rendered that will be discussed here, this Complaint is using initials instead of the names of Plaintiff and her daughter.

10. Defendant Comcast Corporation is the designated Plan Administrator of Su Be's health insurance plan. Its headquarters are located in Philadelphia, Pennsylvania. Comcast is the second largest broadcasting and cable television company in the world by revenue, and the largest cable television company and largest home internet service provider in the U.S. In this Complaint, "Comcast" refers to the named defendant and all successor, predecessor, subsidiary, parent and related entities to which these allegations pertain.

11. Defendant Magellan Health Inc. is a for-profit managed health care company with headquarters in Scottsdale, Arizona. Magellan was retained to process claims and appeals for services described as "Behavioral Health." In this Complaint,

"Magellan" refers to the named defendant and all successor, predecessor, subsidiary, parent and related entities to which these allegations pertain.

**12.** Both Defendants are fiduciaries with ultimate authority and responsibility for the control, management, and administration of the Plan in accord with 29 U.S.C. § 1102(a). In sum, both Defendants have responsibility and complete discretionary authority to control the operation, management, and administration of the Plan, with all powers necessary to properly carry out such responsibilities.

**13.** Plaintiff's relevant summary plan description is attached to this Complaint at **Exhibit A**.

## FACTS

**Insurance coverage promises**

**14.** Comcast's coverage grant language provides that it "will only pay benefits for medically necessary services or supplies that are covered health services, mental health services and substance use disorder services…" (**Ex. A, ECF p. 23**). Covered inpatient mental health services include "[l]odging and dietary services;" "[p]hysician, psychologist, nurse, counselor and trained staff services;" "[f]amily, group and individual therapy and counseling;" "[p]artial hospitalization;" and "[f]acility-based day/night care." (*Id.*, **ECF p. 39**). "Substance Use Disorder Care" largely mimics the services provided under general health services, but also includes "]i]ntensive outpatient treatment programs." (*Id.)*

**So Be's background**

15.     So Be was adopted from Russia when she was 20 months old after being removed from her natural parents because of their neglect. By the time she was 14, she was diagnosed with Unspecified Mood Disorder and Generalized Anxiety Disorder. She also struggled with learning challenges, and was diagnosed with Developmental Disorder of Scholastic Skills and Mathematics Disorder. All of these disorders are recognized by the Diagnostic and Statistical Manual.

16.     These disorders manifested in a variety of ways. So Be developed eating disorders, engaged in suicideation, and was severely depressed. After continued suicideation, So Be's caregivers recommended that she enroll as an inpatient at a wilderness therapy program. With their advice, Su Be selected New Vision Wilderness Therapy, where So Be was treated between July 5, 2017 and September 1, 2017. Su Be was charged, and paid $29,205 for those medically necessary services.

**Defendants' Denial of Coverage**

17.     Su Be submitted her coverage claim to Comcast. In response she received an explanation of benefits form under the Magellan letterhead. It indicated that insurance was not provided, though it did not explain why. Su Be appealed and received a response on February 14, 2018, affirming the previous denial because '[t]he plan does not provide coverage for wilderness programs." The denial exhausted Su Be's internal appeal obligation.

## CLASS ALLEGATIONS

18. Su Be brings this class action on behalf of two classes. The "Comcast Class" is:

*All persons (a) insured by a certificate of coverage (b) underwritten by Comcast Corporation (c) whose wilderness therapy coverage requests were denied (d) because the applicable health insurance plan specifically excluded wilderness therapy from coverage.*

19. The "Magellan Class" is

*All persons (a) whose self-funded ERISA-regulated health insurance plans were (b) administered by Magellan and (c) whose wilderness therapy coverage requests were denied (d) because the applicable health insurance plan specifically excluded wilderness therapy from coverage.*

20. The class period for both classes began six years before the commencement of this action and concludes on the date the classes are certified.

21. The exact number of members of either class is not known, but it is estimated there are at least hundreds of persons in either class. Accordingly, class membership is so numerous that joinder of individual members of the two classes in this action is impracticable. Individual class members are identifiable as the names and addresses of all members of both classes are contained in business records maintained by defendants and may be obtained through discovery.

22. Su Be's claim raises questions of law or fact common to both classes that predominate over any questions solely affecting individual class members in either class. Su Be's claims arise from the same practice or course of conduct and routine coverage adjudication by Defendants that gives rise to all claims. The claims are all based on the same legal theory of breach of contract.

**23.**     The claims of Su Be are typical of the claims of all members of either class because Defendants employ the same or similar coverage language, and coverage practices, for each and every member of the two classes. The same legal theories are raised for each member of the two classes.

**24.**     Su Be can fairly and adequately protect and represent the interests of each member of both classes because she has no conflict of interest in this cause of action with either of the two classes and their membership. Su Be's interests are perfectly aligned with the members of both classes and Su Be and the members of both classes have a mutual interest in seeking damages and other relief against Defendants. Su Be is represented by competent and experienced class action counsel.

**25.**     This action is maintainable under Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual members of either class would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for Defendants.

**26.**     Alternatively, this action is maintainable under Fed. R. Civ. P. 23(b)(3) because the questions of the law or fact common to Su Be's claim and the claims of each member of the class predominate over any question of law or fact affecting only individual members of the two classes, and class representation is superior to other available methods for fair and efficient adjudication of this controversy. The common questions for Plaintiff and the two classes pervade and predominate the individualized claims because they are based on the common question of whether Defendants engaged in a common course of conduct and business practice that resulted in the coverage denial

for medically necessary wilderness therapy services. Defendants acted toward the class members of both classes in a similar or common way. The superiority requirement is satisfied as well because a class action is the most manageable and efficient way to resolve the individual claims of these nationwide classes.

## COUNT I
### VIOLATING PARITY ACT PROTECTIONS
### BROUGHT INDIVIDUALLY AND ON BEHALF OF THE COMCAST CLASS

27. Su Be realleges and incorporates paragraphs 1-26 as if fully set forth.

28. Su Be's first legal claim is brought under 29 U.S.C. § 1132(a)(1)(B) for violations of the Parity Act, which is incorporated into ERISA, at 29 U.S.C. § 1185a. It is brought on her own behalf, and on behalf of the Comcast Class.

29. Under the Parity Act, health insurers must "treat sicknesses of the mind in the same way that they would a broken bone." *New York State Psychiatric Ass'n, Inc. v. United Health Grp.*, 980 F. Supp.2d 527, 542 (S.D.N.Y.), *aff'd in part, vacated in part*, 798 F.3d 125 (2d Cir. 2015).

30. A "treatment limitation" is a limit on either "the scope or duration of treatment." 29 U.S.C. § 1185(a)(3)(B)(iii).

31. Regulations promulgated under this statute focus the Court's analysis in two respects. First, both "quantitative" and "nonquantitative" treatment limitations may run afoul of the Parity Act. 45 C.F.R § 146-136(a). Whereas a quantitative limitation is reduceable to a number, a nonquantitative treatment limitation is any other limitation on the scope or duration of treatment. 45 C.F.R. § 146-136(c)(4)(i).

32.     Second, any limitation applied to mental health treatment must be scrutinized by comparing it to the limitations placed on an analogous medical or surgical treatment in the same classification. 45 C.F.R. § 146-136(c)(2)(i)-(ii).

33.     Comcast's health insurance plans exclude from coverage medically necessary services rendered at wilderness therapy programs while expressly covering comparable medically necessary services rendered at skilled nursing facilities and rehabilitation hospitals.

34.     This disparate treatment for comparable services results in Comcast being out of parity. This disparate treatment in comparable services violates the federal Parity Act as incorporated into Comcast's health plans.

**COUNT II**
**VIOLATING INCORPORATED PARITY ACT PROTECTIONS**
**BROUGHT INDIVIDUALLY AND ON BEHALF OF THE MAGELLAN CLASS**

35.     Su Be realleges and incorporates paragraphs 1-26 as if fully set forth.

36.     Su Be's second claim is brought under 29 U.S.C. § 1132(a)(1)(B) for violations of the Parity Act, which is incorporated into ERISA, at 29 U.S.C. § 1185a. It is brought on her own behalf, and on behalf of the Magellan Class.

37.     Under the Parity Act, health insurers must "treat sicknesses of the mind in the same way that they would a broken bone." *New York State Psychiatric Ass'n, Inc. v. United Health Grp.*, 980 F. Supp.2d 527, 542 (S.D.N.Y.), *aff'd in part, vacated in part*, 798 F.3d 125 (2d Cir. 2015).

38.     A "treatment limitation" is a limit on either "the scope or duration of treatment." 29 U.S.C. § 1185(a)(3)(B)(iii).

39.     Regulations promulgated under this statute focus the Court's analysis in two respects. First, both "quantitative" and "nonquantitative" treatment limitations may run afoul of the Parity Act.  45 C.F.R § 146-136(a). Whereas a quantitative limitation is reduceable to a number, a nonquantitative treatment limitation is any other limitation on the scope or duration of treatment. 45 C.F.R. § 146-136(c)(4)(i).

40.     Second, any limitation applied to mental health treatment must be scrutinized by comparing it to the limitations placed on an analogous medical or surgical treatment in the same classification. 45 C.F.R. §  146-136(c)(2)(i)-(ii).

41.     Magellan administers health insurance plans that exclude from coverage medically necessary services rendered at wilderness therapy programs while expressly covering comparable medically necessary services rendered at skilled nursing facilities and rehabilitation hospitals.

42.     This disparate treatment for comparable services results in Magellan being out of parity and in violation of the federal Parity Act as incorporated into the health plans it administers.

**WHEREFORE**, Plaintiff Su Be, and all other persons similarly situated, demands judgment against Defendants, for benefits, damages, interest, costs, attorney's fees including enhancement of fees, a trial by jury for all issues so triable, and such other relief as this Court deems just and proper.

### JURY DEMAND

Plaintiff Su Be demands a trial by jury on all counts so triable.

DATED:    New York, New York
          October 14, 2020

                                          Respectfully submitted,

*/s/Amanda Peterson*
Amanda Peterson, Esq. (AP1797)
MORGAN & MORGAN, P.A.
90 Broad Street, Suite 1011
New York, NY 10004
(212)564-4568
*apeterson@forthepeople.com*

Robert R. Sparks *(Pro Hac Vice application forthcoming)*
STRAUSS TROY CO., LPA
150 E. Fourth Street, 4th Floor
Cincinnati, OH 45202
Telephone: 513-621-2120
*rrsparks@strausstroy.com*

Jordan Lewis *(Pro Hac Vice application forthcoming)*
*JORDAN LEWIS, P.A.*
*4473 N.E. 11th Avenue*
*Fort Lauderdale, FL 33334*
*Tel: (954) 616-8995*
*jordan@jml-lawfirm.com*

***Attorneys for Plaintiff***